1  GLANCY PRONGAY & MURRAY LLP
2  Lionel Z. Glancy (#134180)
   Robert V. Prongay (#270796)
3  Lesley F. Portnoy (#304851)
4  Charles H. Linehan (#307439)
   1925 Century Park East, Suite 2100
5  Los Angeles, California 90067
6  Telephone: (310) 201-9150
   Facsimile:  (310) 201-9160
7  Email:  lportnoy@glancylaw.com

8  *Attorneys for Plaintiff*
9  *[Additional Counsel on Signature Page]*

10         **UNITED STATES DISTRICT COURT**
11         **CENTRAL DISTRICT OF CALIFORNIA**

12
   RAMANITHARAN RAJARAM,                    Case No.:
13 Individually and On Behalf of All
   Others Similarly Situated,
14                                          **CLASS ACTION COMPLAINT
                            Plaintiff,      FOR VIOLATIONS OF THE
15                                          FEDERAL SECURITIES LAWS**
              v.
16                                          **JURY TRIAL DEMANDED**
   REV GROUP, INC., TIMOTHY W.
17 SULLIVAN, DEAN J. NOLDEN,
   THOMAS B. PHILLIPS, PAUL
18 BAMATTER, JEAN MARIE
   CANAN, DINO CUSUMANO,
19 CHARLES DUTIL, JUSTIN FISH,
   KIM MARVIN, JOEL ROTROFF,
20 GOLDMAN SACHS & CO. LLC,,
   BMO CAPITAL MARKETS CORP.,
21 JEFFERIES LLC, STIFEL,
   NICOLAUS & COMPANY,
22 INCORPORATED, MORGAN
   STANLEY & CO. LLC, ROBERT
23 W. BAIRD & CO.
   INCORPORATED, CREDIT
24 SUISSE SECURITIES (USA) LLC,
   DEUTSCHE BANK SECURITIES
25 INC., WELLS FARGO
   SECURITIES, LLC,
26
                            Defendants.
27

28

                    CLASS ACTION COMPLAINT

Plaintiff Ramanitharan Rajaram ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by REV Group, Inc. ("REV" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by REV Group; and (c) review of other publicly available information concerning REV Group.

## NATURE OF THE ACTION AND OVERVIEW

1.    This is a class action on behalf of persons and entities that acquired REV securities: (1) pursuant and/or traceable to the Company's registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's initial public offering on or about January 27, 2017 (the "IPO" or the "Offering"), seeking to recover compensable damages caused by Defendants' violations of the Securities Act of 1933 ("Securities Act"); and/or (2) between January 27, 2017 and June 7, 2018, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.    REV purportedly designs, manufactures, and distributes specialty

vehicles and related aftermarket parts and services.  The Company claims to serve a customer base primarily in the United States through three segments: Fire & Emergency, Commercial, and Recreation.

3.     On June 6, 2018, after stock market close, REV issued a press release entitled "REV Group, Inc. Reports Fiscal 2018 Second Quarter Results."  Therein, the Company disclosed that its second quarter 2018 results were below expectations due to "cost inflation" across many of the commodities and services the Company buys, the unavailability of chassis, and a negative impact on margins attributed to "lower-than-expected sales of certain higher-content product categories including custom fire apparatus, large commercial buses, and Class A RVs."  The Company also lowered its fiscal year 2018 guidance—predicting "[f]ull-year 2018 revenue of $2.4 to $2.6 billion" compared to "$2.4 to $2.7 billion" announced earlier, and "Net Income of $72 to $87 million" compared to "$90 to $110 million" announced earlier.

4.     On the same day, June 6, 2018, after announcing its Q2 2018 financial results, the Company issued a press release entitled "REV Group, Inc. Appoints Ian Walsh as Chief Operating Officer."  Therein, the Company disclosed that the Company's Chief Operating Officer ("COO"), Thomas B. Phillips ("Phillips") was replaced by Ian Walsh, effective June 1, 2018.

5.     The next day, June 7, 2018, the Company held a conference call to discuss its Q2 2018 results.  On the call, Timothy W. Sullivan ("Sullivan"), the

Company's Chief Executive Officer ("CEO"), elaborated on the Company's poor Q2 2018 financial results.

6.      On this news, REV's share price fell $3.39 per share, or 18.9%, to close at $14.52 per share on June 7, 2018, on unusually heavy trading volume.

7.      Throughout the Class Period and/or in the Company's Registration Statement, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that the Company was experiencing cost inflation across many of the commodities and services it bought; (2) that the Company was experiencing difficulty obtaining the chassis necessary for production; (3) that the Company's margins were being negatively impacted by a lower sales of high margin products, including custom fire apparatus, large commercial buses, and Class A RVs; (4) that the Company did not have "strong visibility into future net sales" to "effectively plan" and manage its backlog of vehicles; (5) that the Company's manufacturing operations were not operating efficiently or at a low cost to satisfy customer demand; and (6) that, as a result of the foregoing, Defendants' statements about REV's business, operations, and prospects, were materially false and/or misleading and/or lacked a reasonable basis.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and

other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.     Plaintiff Ramanitharan Rajaram, as set forth in the accompanying

certification, incorporated by reference herein, purchased REV securities during the Class Period, pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.    Defendant REV Group, Inc. is incorporated in Delaware and its principal executive offices are in Milwaukee, Wisconsin.  REV's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "REVG."

15.    Defendant Timothy W. Sullivan was the CEO of REV at all relevant times.

16.    Defendant Dean J. Nolden ("Nolden") was the Chief Financial Officer ("CFO") of REV at all relevant times.

17.    Defendant Thomas B. Phillips ("Phillips") was the COO of REV at all relevant times until June 1, 2018.

18.    Defendants Sullivan, Nolden, and Phillips (collectively the "Exchange Act Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of REV's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Exchange Act Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the

ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Exchange Act Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Exchange Act Individual Defendants are liable for the false statements pleaded herein.

19.    Defendant Paul Bamatter ("Bamatter") signed or authorized the signing of the Company's Registration Statement filed with the SEC as a Director of REV.

20.    Defendant Jean Marie Canan ("Canan") signed or authorized the signing of the Company's Registration Statement filed with the SEC as a Director of REV.

21.    Defendant Dino Cusumano ("Cusumano") signed or authorized the signing of the Company's Registration Statement filed with the SEC as a Director of REV.

22.    Defendant Charles Dutil ("Dutil") signed or authorized the signing of the Company's Registration Statement filed with the SEC as a Director of REV.

23.    Defendant Justin Fish ("Fish") signed or authorized the signing of the Company's Registration Statement filed with the SEC as a Director of REV.

24.    Defendant Joel Rotroff ("Rotroff") signed or authorized the signing of the Company's Registration Statement filed with the SEC as a Director of REV.

25.     Defendants Bamatter, Canan, Cusumano, Dutil, Fish, Marvin and Rotroff are collectively referred to hereinafter as the "Securities Act Individual Defendants."

26.     Defendant Goldman Sachs & Co. ("Goldman Sachs") served as an underwriter in the Company's IPO.  In the Offering, Goldman Sachs agreed to purchase 3,060,888 shares, exclusive of its over-allotment option.

27.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") served as an underwriter in the Company's IPO.  In the Offering, Morgan Stanley agreed to purchase 3,060,888 shares, exclusive of its over-allotment option.

28.     Defendant Robert W. Baird & Co. Incorporated ("Robert Baird") served as an underwriter in the Company's IPO.  In the Offering, Robert Baird agreed to purchase 1,596,988 shares, exclusive of its over-allotment option.

29.     Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") served as an underwriter in the Company's IPO.  In the Offering, Credit Suisse agreed to purchase 910,712 shares, exclusive of its over-allotment option.

30.     Defendant Deutsche Bank Securities Inc. ("Deutsche Bank") served as an underwriter in the Company's IPO.  In the Offering, Deutsche Bank agreed to purchase 910,712 shares, exclusive of its over-allotment option.

31.     Defendant Jefferies LLC ("Jefferies") served as an underwriter in the Company's IPO.  In the Offering, Jefferies agreed to purchase 910,712 shares, exclusive of its over-allotment option.

32.     Defendant Wells Fargo Securities, LLC ("Wells Fargo") served as an underwriter in the Company's IPO.  In the Offering, Wells Fargo agreed to purchase 910,712 shares, exclusive of its over-allotment option.

33.     Defendant BMO Capital Markets Corp. ("BMO") served as an underwriter in the Company's IPO.  In the Offering, BMO agreed to purchase 796,875 shares, exclusive of its over-allotment option.

34.     Defendant Stifel, Nicolaus & Company, Incorporated ("Stifel") served as an underwriter in the Company's IPO.  In the Offering, Stifel agreed to purchase 341,513 shares, exclusive of its over-allotment option.

35.     Defendants Goldman Sachs, Morgan Stanley, Robert Baird, Credit Suisse, Deutsche Bank, Jefferies, Wells Fargo, BMO and Stifel are collectively referred to hereinafter as the "Underwriter Defendants."

36.     The Company, the Securities Act Individual Defendants, and the Underwriter Defendants, are collectively referred to hereinafter as the "Securities Act Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

37.     REV purportedly designs, manufactures, and distributes specialty vehicles and related aftermarket parts and services.  The Company claims to serve a customer base primarily in the United States through three segments: Fire & Emergency, Commercial, and Recreation.

38.    On January 27, 2017, the SEC declared effective the Form S-1 that REV filed on October 24, 2016, and amended on November 23, 2016, December 23, 2016, January 10, 2017 and January 17, 2017.  The Form S-1 and all amendments thereto, as well as the Form S-8 filed on January 27, 2017, and Form-424B4 form part of the "Registration Statement" for the IPO.

39.    Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

40.    On January 30, 2017, REV priced its IPO of 12,500,000 shares at a price of $22.00 per share, exclusive of the underwriters' option to purchase 1,875,000 additional shares.  According to the Company, the Offering raised net proceeds of approximately $256.7 million.

## Materially False and Misleading
## Statements Issued During the Class Period

41.    The Class Period begins on January 27, 2017. Prior to the start of the Class Period, on January 17, 2017, the Company filed an amendment to its Form S-1.  In the amendment, the Company, in relevant part, stated:

> Our business model utilizes our unique scale to drive profitable organic and acquisitive growth. We seek to gain market share by delivering high-quality products with customized attributes tailored to our customers' product specifications, while simultaneously reducing costs and shortening delivery lead times. We aim to achieve this by standardizing and optimizing certain processes across our segments in areas including: procurement, engineering and product development, lean manufacturing, dealer management, pricing and aftermarket parts

sales. We believe our manufacturing and service network, consisting of 15 manufacturing facilities and 11 aftermarket service locations (called Regional Technical Centers or "RTCs"), provides us with a competitive advantage through the sharing of best practices, manufacturing flexibility based on relative facility utilization levels, delivery costs and lead times, economies of scale, customer service capabilities and a complementary distribution system. Our business consists primarily of design, engineering, integration and assembly activities, which require low levels of capital expenditures. Additionally, our business has a highly variable cost structure that results in operational flexibility which, we believe, when combined with low levels of capital expenditures, can produce high returns on invested capital. Furthermore, our broad presence across the specialty vehicle market and large manufacturing and distribution network are important differentiators in our ability to grow through acquisitions. We seek to make synergistic acquisitions that further enhance our existing market positions or enter REV into new, attractive product segments. In the past 10 years, we have successfully integrated nine acquisitions and have demonstrated the ability to grow and enhance the earnings profile of acquired businesses by either consolidating acquired businesses into our existing plant footprint or by introducing REV processes into the newly acquired businesses to drive profitable growth.

Our management team has an average of 28 years of experience in highly specialized industrial manufacturing and aftermarket parts and services businesses. Beginning in 2014, our new leadership team introduced several initiatives to accelerate growth and improve our profitability. These initiatives included: improving brand management, strengthening distribution, implementing a centralized enterprise-wide procurement strategy, growing adjacent and aftermarket products and services, improving production processes within our facilities, driving down total cost of quality, implementing value-based pricing strategies and reducing fixed costs.

We have delivered strong financial and operating results from fiscal year 2014 to fiscal year 2016, as set forth below:

(1)     Net sales were $1,721 million, $1,735 million and $1,926 million for fiscal year 2014, fiscal year 2015 and fiscal year 2016, respectively, which represents a compound annual growth rate, or "CAGR," of 3.8%;

(2)     We improved our operating performance, specifically:

•       Net income was $1.5 million, $23 million and $30 million for fiscal year 2014, fiscal year 2015 and fiscal year 2016, respectively, which represents a CAGR of 173%;

Adjusted Net Income was $14 million, $34 million and $55 million for fiscal year 2014, fiscal year 2015 and fiscal year 2016, respectively, which represents a CAGR of 56%;

Adjusted EBITDA was $62 million, $90 million and $127 million for fiscal year 2014, fiscal 2015 and fiscal year 2016, respectively, which represents a CAGR of 27%; and

(3)     We drove approximately 148 basis points and 280 basis points of expansion in our net income and Adjusted EBITDA margins, respectively.

42.     On March 7, 2017 the Company issued a press release entitled "**REV Group. Inc. Reports Fiscal First Quarter 20171 Results and Provides Full-Year Guidance**." Therein, the Company, in relevant part, stated:

• Net sales of $443 million in the first quarter 2017 grew 19% over the prior year first quarter

• Net loss of $13.3 million in the first quarter 2017, primarily due to one-time stock compensation expense as a result of our IPO

• Adjusted EBITDA in the first quarter 2017 was $21.1 million, which was 40% higher than first quarter 2016

• First quarter 2017 Adjusted net income was $5.7 million, or $0.11 per diluted share, up from $0.07 per diluted share for the first quarter 2016

• The Company expects full-year fiscal 2017 consolidated net sales in the range of $2.225 to $2.325 billion, net income in the range of $40 to $43 million and Adjusted EBITDA in the range of $150 to $155 million

REV Group, Inc. (NYSE: REVG) today reported results for the three months ended January 28, 2017 ("first quarter 2017"). Consolidated net sales in the first quarter of 2017 were $442.9 million, growing 18.8% over the three months ended January 30, 2016 ("first quarter 2016"). The increase was driven predominately by strong growth in the Fire & Emergency and Recreation segments. REV Group also had strong growth in first quarter 2017 in aftermarket parts sales, which grew 10.4% over first quarter 2016 as the Company continues to execute on its growth strategies.

The Company's first quarter 2017 net loss was $13.3 million, or ($0.26) per diluted share. The first quarter 2017 net loss was negatively impacted by a number of one-time items which included a $25.5 million before-tax stock compensation charge, due to our initial public offering ("IPO"), for stock options awarded prior to the IPO. REV Group's IPO took place on January 27, 2017 and closed on February 1, 2017. Adjusted Net Income for the first quarter 2017 was $5.7 million, or $0.11 per diluted share, compared to $3.9 million, or $0.07 per diluted share, in the first quarter fiscal 2016.

Adjusted EBITDA in the first quarter 2017 was $21.1 million, representing growth of 40.4% over Adjusted EBITDA of $15.0 million in the first quarter 2016. The increase in Adjusted EBITDA was driven by a number of factors including higher vehicle sales, strong aftermarket parts sales, lower discounts for certain vehicle categories, and ongoing procurement and production cost optimization efforts.

REV Group, Inc. President and CEO, Tim Sullivan said "We are pleased to report strong results for our initial quarter as a public company. Our first quarter 2017 results demonstrate solid execution of the ongoing plan to scale our 27 market leading specialty vehicle brands and meet our long-term target of generating company-wide Adjusted EBITDA margins of 10%. Our strategic efforts to increase profitability were evident in our results. Sales growth was driven by strong end-market demand, gains in market share and our new product initiatives. Our strong results serve as a testament to the hard work of our employees who are executing our strategies on a daily basis."

43.     On March 7, 2017, the Company filed its 10-Q with the SEC and reaffirmed the financial results announced in the press release issued the same day.

44.     On June 7, 2017 the Company issued a press release entitled "**REV Group, Inc. Reports Strong Fiscal Second Quarter 20171 Results and Provides Updated Full Fiscal Year Guidance**."     Therein, the Company, in relevant part, stated:

•Net sales of $545.3 million in the second quarter 2017 grew 14% over the prior year second quarter

•Net income of $6.8 million in the second quarter 2017 declined 15% over the prior year second quarter due to the impact of one-time expenses (primarily costs associated with early extinguishment of debt)

•Adjusted Net Income in second quarter 2017 was $19.0 million, which was 33% higher than second quarter 2016

•Adjusted EBITDA in the second quarter 2017 was $37.6 million, which was 16% higher than the prior year quarter

•Year-to-date fiscal 2017 Adjusted EBITDA of $58.7 million represents a 24% increase over the prior year first half results

•Completed two accretive, synergistic tuck-in acquisitions that

broaden REV's product portfolio and strengthen its position in each of its three segments

•Accelerated and enlarged organic investment in capital expenditure projects (e.g. investments in IT and our parts and service business, among others) which will drive growth in future fiscal years

•Updated outlook for full-year fiscal 2017 reflects increasing consolidated net sales expectation in the range of $2.3 to $2.4 billion, net income in the range of $36 to $39 million and increasing Adjusted EBITDA expectation in the range of $157 to $162 million

REV Group, Inc. (NYSE: REVG) today reported results for the three months ended April 29, 2017 ("second quarter 2017"). Consolidated net sales in the second quarter of 2017 were $545.3 million, growing 13.6% over the three months ended April 30, 2016 ("second quarter 2016"). The increase was driven predominately by strong growth in the Fire & Emergency and Recreation segments. Year-to-date consolidated net sales were $988.3 million for the six months ended April 29, 2017, which was an increase of 15.9% over the first six months of fiscal 2016.

The Company's second quarter 2017 net income was $6.8 million, or $0.10 per diluted share. Second quarter 2017 net income was impacted by a number of one-time items that included an $11.9 million charge from the early extinguishment of debt following the Company's initial public offering ("IPO") and repayment of its Senior Secured Notes, as well as its April 2017 debt refinancing. Adjusted Net Income for the second quarter 2017 of $19.0 million, or $0.29 per diluted share, grew 33.0% compared to $14.3 million, or $0.28 per diluted share, in the second quarter fiscal 2016 (second quarter 2016 contained fewer outstanding shares). Net income for the first six months of fiscal 2017 was a loss of $6.5 million, or a loss of $0.11 per diluted share due to several one-time expense items, the largest of which related to the IPO and debt refinancings referenced above.

Year-to-date Adjusted Net Income was $24.8 million for the first half of fiscal 2017 compared to $18.2 million for the first six months of fiscal 2016, which represents an increase of 36.4% due to higher earnings from operations as well as lower interest expense.

Adjusted EBITDA in the second quarter 2017 was $37.6 million, representing growth of 16.1% over Adjusted EBITDA of $32.3 million in the second quarter 2016. The increase in Adjusted EBITDA was driven by a number of factors including higher vehicle sales, strong aftermarket parts sales, impact of acquisitions, ongoing procurement.

45.    On June 7, 2017, the Company filed its 10-Q with the SEC and reaffirmed the financial results announced in the press release issued the same day.

46.    On September 7, 2017 the Company issued a press release entitled "**REV Group, Inc. Reports Strong Third Quarter 2017 Results, Reaffirms Full-Year 2017 Guidance**."  Therein, the Company, in relevant part, stated:

• Net sales of $595.6 million in the third quarter 2017 grew 13% over the prior year third quarter

• Net income of $15.2 million in the third quarter 2017 grew 16% over the prior year third quarter

• Adjusted Net Income in third quarter 2017 was $21.9 million, 36% higher than third quarter 2016

• Adjusted EBITDA in the third quarter 2017 was $45.5 million, 36% higher than the prior year quarter

• Year-to-date 2017 Adjusted EBITDA of $104.1 million represents a 29% increase over prior year results

• Announces collaboration with Ford Motor Company dealers to offer REV's dealers a complete catalog of genuine Ford chassis parts

• Officially awarded the Los Angeles County transit bus contract expected to be worth over $400 million in revenue over five years

• Announces the acquisition of AutoAbility, a technology leader and manufacturer of rear-entry mobility vans

• Reaffirming full-year 2017 outlook for net sales of $2.3 to $2.4 billion, and Adjusted EBITDA of $157 to $162 million; net income anticipated in the range of $36 to $39 million.

REV Group, Inc. (NYSE: REVG) today reported results for the three months ended July 29, 2017 ("third quarter 2017"). Consolidated net sales in the third quarter of 2017 were $595.6 million, growing 12.8% over the three months ended July 30, 2016 ("third quarter 2016"). This increase was driven by strong growth in the Fire & Emergency and Recreation segments, offset slightly by the impact of a chassis recall, which delayed shipments in both the Fire & Emergency and Commercial segments. The sanctioned repair for these recalled chassis is being implemented and the impacted REV vehicle conversions will be shipped in REV's fourth quarter. Year-to-date consolidated net sales were $1.6 billion for the nine months ended July 29, 2017, which was an increase of 14.7% over the first nine months of fiscal 2016.

The Company's third quarter 2017 net income was $15.2 million, or $0.23 per diluted share. Adjusted Net Income for the third quarter 2017 was $21.9 million, or $0.33 per diluted share, which grew 36.3% compared to $16.0 million, or $0.31 per diluted share, in the third quarter 2016 (third quarter 2017 diluted earnings per share is calculated using 14.0 million more shares outstanding than the prior year quarter). Net income for the first nine months of 2017 was $8.7 million, or $0.14 per diluted share due to several one-time expense items, the largest of which related to our IPO and subsequent debt refinancings. Year-to-date Adjusted Net Income was $46.7 million for the first nine months of 2017 compared to $34.2 million for the first nine months of 2016, which represents an increase of 36.4% resulting from higher earnings from operations as well as lower interest expense.

47.    On September 7, 2017, the Company filed its 10-Q with the SEC and reaffirmed the financial results announced in the press release issued the same day.

48.    On December 19, 2017, the Company issued a press release entitled "**REVGROUP, INC.REPORTS FISCAL 2017 FOURTHQUARTER AND**

**FULL YEAR RESULTS**."  Therein, the Company, in relevant part, stated:

• Net sales growth of 26 percent, net income growth of 88 percent, and Adjusted EBITDA growth of 39 percent for the fourth quarter versus the comparable quarter in the prior year

• Fourth quarter and full fiscal year 2017 net income of $22.7 million and $31.4 million, respectively

• Fourth quarter and full fiscal year 2017 Adjusted EBITDA of $58.4 million and $162.5 million, respectively

• Reaffirms full-year fiscal 2018 outlook for net sales of $2.4 to $2.7 billion, and Adjusted EBITDA of $200 to $220 million

REVGroup, Inc. (NYSE: REVG) today reported results for the three months ended October 31, 2017 ("fourth quarter 2017"). Consolidated net sales in the fourth quarter of 2017 were $683.9 million, growing 25.5 percent over the three months ended October 29, 2016 ("fourth quarter 2016"). This increase was driven by strong growth in the Fire & Emergency and Recreation segments. Consolidated net sales were $2.27 billion for the twelve months ended October 31, 2017 ("full year 2017"), which was an increase of 17.7 percent over the twelve months ended October 29, 2016 ("full year 2016").

The Company's fourth quarter 2017 net income was $22.7 million, or $0.35 per diluted share. Adjusted Net Income for the fourth quarter 2017 was $29.2 million, or $0.44 per diluted share, which grew 54.5 percent compared to $18.9 million, or $0.37 per diluted share, in the fourth quarter 2016 (fourth quarter 2017 diluted earnings per share is calculated using 14.3 million more shares outstanding than the prior year quarter). Net income for the full year 2017 was $31.4 million, or $0.50 per diluted share. Full year 2017 net income was negatively impacted by several one-time expense items, the largest of which related to our IPO and subsequent debt refinancings. Full year 2017 Adjusted Net Income was $75.9 million compared to $53.2 million for the full year 2016, which represents an increase of 42.7 percent resulting from higher earnings from operations, positive impact from our acquisitions, as well as lower interest expense.

Adjusted EBITDA in the fourth quarter 2017 was $58.4 million, representing growth of 39.1 percent over Adjusted EBITDA of $42.0 million in the fourth quarter 2016. A number of factors including increased vehicle sales, ongoing procurement and production cost optimization initiatives, strategic pricing actions, and the impact of acquisitions drove the higher Adjusted EBITDA in the quarter. Full year 2017 Adjusted EBITDA was $162.5 million, which reflects a 32.3 percent increase over full year 2016.

REVGroup, Inc. President and CEO, Tim Sullivan said, "We are pleased to report another quarter of strong earnings and year-over-year growth. Our strong fourth quarter completed the first successful year for REV Group as a public company. The combination of successful commercial and product strategies, higher sales volumes and our team's focus on operational improvement initiatives drove improved profit margins across all our businesses on a year over year basis. I am proud to report 18 percent sales growth and 32 percent growth in Adjusted EBITDA in 2017, but even more importantly, I am pleased to report that all three of our segments continue to have strong.

49.    On December 21, 2017, the Company filed its 10-K with the SEC and reaffirmed the financial results announced in the press release issued on December 19, 2017.

50.    On March 7, 2018 the Company issued a press release entitled "REV Group, Inc. Reports Fiscal 2018 First Quarter Results."  Therein, the Company, in relevant part, stated:

REV Group, Inc. (NYSE: REVG) today reported results for the three months ended January 31, 2018 ("first quarter 2018"). Consolidated net sales in the first quarter 2018 were $514.9 million, an increase of 16.2 percent over the three months ended January 28, 2017 ("first quarter 2017"). This increase reflects sales growth in each of the Company's reported operating segments which was partially driven by the impact of acquisitions.

"Fiscal year 2018 is off to a good start as we saw continued growth across most of our product categories and we remain on track to meet our full year objectives," said Tim Sullivan, CEO REV Group, Inc.

"We continue to remain highly focused on the execution of our commercial, product and operating strategies to improve profitability as we work towards our long-term goal of an enterprise-wide EBITDA margin in excess of 10 percent. Additionally, we continued to execute on our disciplined capital allocation strategy with the acquisition of Lance Camper this quarter, which enables our entry into the large and fast growing towables RV market. With a strong backlog of $1.24 billion we expect to continue to see improving operating leverage in the business and thus expect earnings growth to exceed sales growth in fiscal year 2018."

The Company's first quarter 2018 net income was $9.4 million, or $0.14 per diluted share compared to a net loss of $13.3 million, or $0.26 per diluted share in the first quarter of 2017. First quarter 2018 net income improved as a result of higher earnings from operations, the benefit of acquisitions, lower interest expense, and the favorable impact of recently enacted U.S. tax reform. Adjusted Net Income for the first quarter 2018 was $9.7 million, or $0.15 per diluted share, which grew 72.0 percent compared to $5.7 million, or $0.11 per diluted share, in the first quarter 2017.

Adjusted EBITDA in the first quarter 2018 was $21.3 million, representing growth of 0.9 percent over Adjusted EBITDA of $21.1 million in the first quarter 2017. Adjusted EBITDA performance during the quarter benefited from higher net sales and earnings from certain business segments as well as the impact of acquisitions.

\*        \*        \*

**Fiscal 2018 Full Year Outlook**

Mr. Sullivan concluded, "First quarter results were in-line with our expectations and our view of end market demand and macro conditions remains consistent with prior expectations. Therefore, we are reaffirming our prior guidance and are still expecting full fiscal year 2018 revenues of $2.4 to $2.7 billion and Adjusted EBITDA of $200 to $220 million. Based on first quarter results, we are updating our expectation of full fiscal year 2018 net income to be in the range of $90 to $110 million and Adjusted Net Income to be in the range of $110 to $125 million."

51.     On the same day, March 7, 2018, REV filed its quarterly report with the SEC on Form 10-Q for the quarterly period ended January 31, 2018.   The Company's 10-Q was signed by Defendants Sullivan and Nolden and reaffirmed the financial results announced in the press release issued the same day.

52.     The above statements identified in ¶¶41-51 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's

business, operations, and prospects.  Specifically, Defendants failed to disclose: (1) that the Company was experiencing cost inflation across many of the commodities and services it bought; (2) that the Company was experiencing difficulty obtaining the chassis necessary for production; (3) that the Company's margins were being negatively impacted by a lower sales of high margin products, including custom fire apparatus, large commercial buses, and Class A RVs; (4) that the Company did not have "strong visibility into future net sales" to "effectively plan" and manage its backlog of vehicles; (5) that the Company's manufacturing operations were not operating efficiently or at a low cost to satisfy customer demand; and (6) that, as a result of the foregoing, Defendants' statements about REV's business, operations, and prospects, were materially false and/or misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

53.    On June 6, 2018, after stock market close, REV issued a press release entitled "REV Group, Inc. Reports Fiscal 2018 Second Quarter Results."  Therein, the Company disclosed that its second quarter 2018 results were below expectations due to "cost inflation" across many of the commodities and services the Company buys, the unavailability of chassis, and a negative impact on margins attributed to "lower-than-expected sales of certain higher-content product categories including custom fire apparatus, large commercial buses, and Class A RVs."  The Company also lowered its fiscal year 2018 guidance—predicting "[f]ull-year 2018 revenue of

"$2.4 to $2.6 billion" compared to "$2.4 to $2.7 billion" announced earlier, and "Net Income of $72 to $87 million" compared to "$90 to $110 million" announced earlier.  In greater part, the Company stated:

> REV Group, Inc. (NYSE: REVG), a manufacturer of industry-leading specialty vehicle brands, today reported results for the three months ended April 30, 2018 ("second quarter 2018"). Consolidated net sales in the second quarter 2018 were $608.9 million, representing growth of 11.7% over the three months ended April 29, 2017 ("second quarter 2017"). The Company's second quarter 2018 net income was $7.4 million, or $0.11 per diluted share. Adjusted net income for the second quarter 2018 was $15.6 million, or $0.24 per diluted share, a decline of 17.9% compared to $19.0 million, or $0.29 per diluted share, in the second quarter 2017. Adjusted EBITDA[2] in the second quarter 2018 was $34.1 million, representing a decline of 9.2% compared to adjusted EBITDA of $37.6 million in the second quarter 2017. The Company ended the quarter with total backlog of $1,270.5 million, representing growth quarter over quarter and year over year.

> "Our fiscal second quarter results were below our expectations and were impacted by a number of factors." commented Tim Sullivan, CEO of REV Group. "In particular, cost inflation across many of the commodities and services we buy was significant in the quarter and due to the length of our backlogs we were not able to mitigate these increases. We estimate the cost inflation will have an approximate $19 million impact on our current fiscal year. Additionally, production and sales at several of our business units were adversely impacted by the availability of chassis. Finally, margins were impacted by lower-than-expected sales of certain higher-content product categories including custom fire apparatus, large commercial buses, and Class A RVs."

> "Longer term, in response to these factors, we have taken mitigating action across our business to drive targeted margin expansion. First, we have implemented price increases and surcharges to offset material and service cost increases for all new orders. Second, we have implemented a series of significant cost and spending reduction actions including: supply chain actions, consolidations of certain facilities, and reductions in overhead headcount and spending. We estimate these actions will result in annualized savings of $20 million and they are already fully implemented as of today. Given the length of our backlogs, we estimate the impact on EBITDA of these price actions will be approximately $7 million for fiscal year 2018. Third, we have continued to add talent in several key areas of our business that we believe will help accelerate our long-term growth objectives, including the recent addition of Ian Walsh as our new Chief Operating Officer."

> Mr. Sullivan concluded, "While we've revised our full-year outlook downward, we still expect to generate solid financial performance this year, with approximately 10% sales growth and Adjusted EBITDA growth of approximately 11% at the midpoint of our guidance range. We are foundationally supported by the continued strength in our order

activity, the growth in our backlogs, and our market positions remain strong. The margin improvement initiatives we implemented during the second quarter will help us drive performance improvement in the back half of this year, and we expect to close the year with good momentum as approximately 70% of full-year Adjusted EBITDA is expected to be generated during the third and fourth quarters, consistent with our historic seasonality. Finally, we'll continue to remain active in the M&A market and are committed to efficient and shareholder-friendly capital allocation policies. We opportunistically repurchased approximately $5 million of our shares during the second quarter, in addition to our ongoing capex investments and our regular quarterly dividend."

* * *

**Fiscal 2018 Full Year Outlook**

As a result of lower-than-expected second-quarter performance due to the negative factors discussed above which are impacting the Company's margins, REV has revised its full-year outlook. The Company now expects full-year 2018 results in the following ranges:

- Full-year 2018 revenue of $2.4 to $2.6 billion

- Adjusted EBITDA of $175 to $185 million

- Net Income of $72 to $87 million

- Adjusted Net Income of $94 to $105 million

54.    On the same day, June 6, 2018, after announcing its Q2 2018 financial results, the Company issued a press release entitled "REV Group, Inc. Appoints Ian Walsh as Chief Operating Officer."  Therein, the Company disclosed that Defendant Phillips was replaced by Ian Walsh, effective June 1, 2018.  In greater part, the Company stated:

REV Group, Inc. (NYSE:REVG), a manufacturer of industry-leading specialty vehicle brands, today announced that Ian Walsh has been appointed Chief Operating Officer, effective June 1, 2018. Mr. Walsh replaces Thomas Phillips, who will remain at the Company in an advisory capacity through the end of fiscal year 2018 in order to ensure a smooth transition.

55.    The next day, June 7, 2018, the Company held a conference call to discuss its Q2 2018 results.  On the call, Defendant Sullivan, elaborated on the

Company's poor Q2 2018 financial results.  In relevant part, Defendant Sullivan stated:

> Now, for the challenges. Two of our higher-quality business units struggled in the first two quarters this year. In our Commercial segment, our Collins school bus business declined to participate in a very large prebate requested by one of our school bus contractors. This adversely affected our first half 2018 performance, but we believe this was ultimately the right decision for the business and we believe we can recover and get close to plan by the end of fiscal 2018 with new traditional school bus and contractor sales opportunities.
>
> Additionally, our transit bus business, which is also in our Commercial segment, is facing a short-term delay in activity between the end of our Chicago City contract and the beginning of our forthcoming Los Angeles county contract. As a result, our transit bus business will be below our plan for the full year, but we anticipate a return to higher production and profitability levels for this business in fiscal 2019.
>
> *        *        *
>
> Now, let's talk about our supply chain. We've experienced significant and rapid cost inflation during the second quarter, within both our material supply chain, but also in our service supply chains, items like freight-in, freight-out, for example, which we were unable to offset in the quarter. As a matter of practice, we purchase many elements of our cost base well in advance in order to match backlogs with necessary inputs.
>
> For example, we have approximately 60% of our aluminum spend purchased ahead through calendar year 2018 at historical prices. Nevertheless, the combination of the announced tariffs and the resulting turmoil has created pricing opportunity for our suppliers. In the past two months alone, we have seen almost $19 million in cost increases on an annualized basis, which breaks down to $6 million in the first half of the year and $13 million in the back half of the year.
>
> Clearly, this is disturbing, particularly when a large portion of the price increases are not related to steel and aluminum, which are the current targets of the tariffs. The tariffs have also created unpredicted consequences. As soon as tariffs were suggested, there was a run on many of the commercial chassis we purchase and convert.
>
> We are paying extra freight charges to get the chassis we need for the second half shipments. Over the last 60 days alone, this has resulted in approximately $1 million additional cost. We now need to get certain chassis shipped via truck due to railcar shortages based on what we believe to be abnormal and artificial demand.
>
> In efforts to maximize our throughput time despite these inefficiencies, in some cases, we have decided to build some products on racks while we wait for chassis deliveries. This creates additional labor hours and expenses and labor availability and stability in some locations like

high-density Elkhart, Indiana, which has resulted in some escalation of labor costs.

This is a 30,000-foot macro view of the near-term supply chain inefficiencies we're facing, but there were two additional smaller events that exasperated these near-term challenges during the second quarter. First, the move of Mercedes-Benz Sprinter van production from Germany to the United States market has made on-time deliveries challenging and a recent plant fire of a key supplier to most of our domestic chassis manufacturers caused productions shutdowns, in some cases up to four weeks.

*        *        *

While cost and chassis were a big part of the story of the quarter, we experienced an unfavorable sales mix as well. In particular, our mix of sales for the quarter had less of many of our higher content and gross margin product segments, including large commercial buses, custom fire apparatus and certain RV, bus and ambulance products. Some of the mix miss this quarter will recover in the second half of this year, but for certain products such as transit buses and certain Class A RV models, we will not likely make up the loss sales mix in the second half.

Based on all the factors I just discussed, we are adjusting our guidance downward for the remainder of fiscal 2018. Dean will detail the specific changes to our outlook shortly, but the midpoint of our revised guidance ranges translates to revenue growth of approximately 10% and adjusted EBITDA growth of approximately 11% year-over-year.

56.    On this news, REV's share price fell $3.39 per share, or 18.9%, to close at $14.52 per share on June 7, 2018, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

57.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired REV securities: (1) pursuant and/or traceable to the Company's Registration Statement issued in connection with the Company's IPO, seeking to recover compensable damages caused by Defendants' violations of Sections 11 and 15 of the Securities Act; and/or (2) between January 27, 2017 and June 7, 2018, inclusive, seeking to pursue remedies under the Exchange Act.

Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

58.    The members of the Class are so numerous that joinder of all members is impracticable.    Throughout the Class Period, REV's common stock actively traded on the NYSE.    While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.    Millions of REV shares were traded publicly during the Class Period on the NYSE.    As of June 5, 2018, REV had 64,380,745 shares of common stock outstanding.    Record owners and other members of the Class may be identified from records maintained by REV or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

59.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

60.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

61.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of REV Group; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

62.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

63.    The market for REV's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, REV's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased

or otherwise acquired REV's securities relying upon the integrity of the market price of the Company's securities and market information relating to REV Group, and have been damaged thereby.

64.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of REV's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about REV's business, operations, and prospects as alleged herein.

65.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about REV's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the

Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

66.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

67.    During the Class Period, Plaintiff and the Class purchased REV's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

68.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding REV Group, their control over, and/or receipt and/or modification of REV's allegedly materially misleading misstatements and/or their associations with the Company

which made them privy to confidential proprietary information concerning REV Group, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

69.    The market for REV's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, REV's securities traded at artificially inflated prices during the Class Period.  On March 7, 2018, the Company's stock price closed at a Class Period high of $27.15 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of REV's securities and market information relating to REV Group, and have been damaged thereby.

70.    During the Class Period, the artificial inflation of REV's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about REV's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of REV and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of

the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

71. At all relevant times, the market for REV's securities was an efficient market for the following reasons, among others:

(a) REV stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, REV filed periodic public reports with the SEC and/or the NYSE;

(c) REV regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) REV was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

72. As a result of the foregoing, the market for REV's securities promptly digested current information regarding REV from all publicly available sources and

reflected such information in REV's stock price. Under these circumstances, all purchasers of REV's securities during the Class Period suffered similar injury through their purchase of REV's securities at artificially inflated prices and a presumption of reliance applies.

73.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## **NO SAFE HARBOR**

74.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they

were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of REV who knew that the statement was false when made.

### FIRST CLAIM
### Violation of Section 11 of the Securities Act
### Against the Securities Act Defendants

75. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

76. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Securities Act Defendants.

77. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

78.    REV is the registrant for the IPO.    The Securities Act Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

79.    As issuer of the shares, REV is strictly liable to Plaintiff and the Class for the misstatements and omissions.

80.    None of the Securities Act Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

81.    By reasons of the conduct herein alleged, each Section 11 Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

82.    Plaintiff acquired REV shares pursuant and/or traceable to the Registration Statement for the IPO.

83.    Plaintiff and the Class have sustained damages.    The value of REV shares has declined substantially subsequent to and due to the Securities Act Defendants' violations.

## SECOND CLAIM
### Violation of Section 15 of the Securities Act
### Against the Securities Act Individual Defendants

84.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

85.     This count is asserted against the Securities Act Individual Defendants and is based upon Section 15 of the Securities Act.

86.     The Securities Act Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of REV within the meaning of Section 15 of the Securities Act.    The Securities Act Individual Defendants had the power and influence and exercised the same to cause REV to engage in the acts described herein.

87.     The Securities Act Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

88.     By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

### THIRD CLAIM
**Violation of Section 10(b) of The Exchange Act and
Rule 10b-5 Promulgated Thereunder
Against the Company and the Exchange Act Individual Defendants**

89.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

90.     During the Class Period, the Company and the Exchange Act Individual Defendants carried out a plan, scheme and course of conduct which was

intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase REV's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

91.    The Company and the Exchange Act Individual Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for REV's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  The Company and the Exchange Act Individual Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

92.    The Company and the Exchange Act Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about REV's financial well-being and prospects, as specified herein.

93.    The Company and the Exchange Act Individual Defendants employed

devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of REV's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about REV and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

94.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant

times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

95. The Company and the Exchange Act Individual Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing REV's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by the Company and the Exchange Act Individual Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, the Company and the Exchange Act Individual Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

96. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of REV's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were

artificially inflated, and relying directly or indirectly on the false and misleading statements made by the Company and the Exchange Act Individual Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by the Company and the Exchange Act Individual Defendants, but not disclosed in public statements by the Company and the Exchange Act Individual Defendants during the Class Period, Plaintiff and the other members of the Class acquired REV's securities during the Class Period at artificially high prices and were damaged thereby.

97.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that REV was experiencing, which were not disclosed by the Company and the Exchange Act Individual Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their REV securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

98.    By virtue of the foregoing, the Company and the Exchange Act Individual Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

99.    As a direct and proximate result of the Company and the Exchange Act Individual Defendants' wrongful conduct, Plaintiff and the other members of the

Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## FOURTH CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Exchange Act Individual Defendants

100.  Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

101.  The Exchange Act Individual Defendants acted as controlling persons of REV within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Exchange Act Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Exchange Act Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

102.  In particular, the Exchange Act Individual Defendants had direct and

supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

103.  As set forth above, REV and the Exchange Act Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, the Exchange Act Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

1

## **JURY TRIAL DEMANDED**

2

Plaintiff hereby demands a trial by jury.

3

4

Dated:  June 27, 2018                    **GLANCY PRONGAY & MURRAY LLP**

5

6

By:  *s/ Lesley F. Portnoy*

7

Lionel Z. Glancy

8

Robert V. Prongay

9

Lesley F. Portnoy

Charles H. Linehan

10

1925 Century Park East, Suite 2100

11

Los Angeles, CA 90067

Telephone: (310) 201-9150

12

Facsimile: (310) 201-9160

13

**LAW OFFICES OF HOWARD G. SMITH**

14

Howard G. Smith

3070 Bristol Pike, Suite 112

15

Bensalem, PA 19020

16

Telephone: (215) 638-4847

Facsimile: (215) 638-4867

17

18

*Counsel for Plaintiff*

19

20

21

22

23

24

25

26

27

28

## SWORN CERTIFICATION OF PLAINTIFF

REV Group, Inc., **SECURITIES LITIGATION**

I, Ramanitharan Rajaram, certify:

1. I have reviewed the complaint and authorized its filing and/or adopted its allegations.

2. I did not purchase REV Group, Inc., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in REV Group, Inc., during the class period set forth in the Complaint are as follows:

   See Attached Transactions

5. I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

   ____ Check here if you are a current employee or former employee of the defendant Company.

   I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: 8th June 2018

_____
(Please Sign Your Name Above)

(Redacted)

**Ramanitharan Rajaram's Transactions in
REV Group, Inc. (REVG)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 3/14/2018 | Bought | 12,000 | $22.35 |
| 3/14/2018 | Bought | 1,000 | $22.24 |
| 6/7/2018 | Sold | -400 | $13.06 |
| 6/7/2018 | Sold | -600 | $13.02 |
| 6/7/2018 | Sold | -100 | $13.04 |
| 6/7/2018 | Sold | -5,900 | $13.00 |
| 6/7/2018 | Sold | -6,000 | $13.01 |